# EXHIBIT 3

PALAIS DES NATIONS • 1211 GENEVA 10, SWITZERLAND

**Mandates of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment; the Working Group on Enforced or Involuntary Disappearances and the Special Rapporteur on the promotion and protection of the right to freedom of opinion and expression**

Ref.: UA ARE 3/2022
(Please use this reference in your reply)

7 December 2022

Excellency,

We have the honour to address you in our capacity as Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment; Working Group on Enforced or Involuntary Disappearances and Special Rapporteur on the promotion and protection of the right to freedom of opinion and expression, pursuant to Human Rights Council resolutions 43/20, 45/3 and 43/4.

In this connection, we would like to bring to the attention of your Excellency's Government information we have received concerning the purported imminent extradition of Mr. Sherif Osman, from the United Arab Emirates to Egypt on the basis of a red notice issued by the Arab Interior Ministers Council under the charge of incitement on social media against the Egyptian Government.

According to the information received:

Mr. Sherif Osman is a dual national of Egypt and the United States of America. He was born on 29 December 1976, and resides in the city of Westfield, Massachusetts in the United States. He is a former Egyptian army officer who has been an outspoken critic of the Egyptian government, including on his YouTube channel.

On 31 October 2022, Mr. Osman posted a video on his YouTube channel calling for protests on 11 November 2022, during U.S. President Joe Biden's visit to Egypt to attend the COP27, commonly referred to as the "11/11 protest".

On 4 November 2022, Mr. Osman travelled to Dubai for a family visit. Two days later, on 6 November, he was outside a restaurant when two men dressed in civilian clothes and driving a black car approached him and abducted him. During the first six hours after Mr. Osman's arrest, the Government denied having him under its custody, which amounts to an enforced disappearance. After having enquired with various authorities, his family was finally informed that he was detained at the Police Headquarters in Dubai.

On 8 November, Mr. Osman was brought before the Dubai Public Prosecutor, who informed him that he was arrested based on a red notice issued by the Arab Interior Ministers Council of the League of Arab States, at Egypt's request (Extradition Case 138/2022). The Prosecutor referred to the accusation of incitement on social media against the Egyptian Government under article 19 of the 2018 Law on the Organisation of Press, Media, and the

Supreme Council of Media, referring to videos posted by Mr. Osman's on YouTube platform, dating back to 2019. Mr. Osman was also informed that evidence supporting these charges must be submitted to the court within one month. On the same day, he was transferred to Dubai Central Prison, where he remains in detention.

Since his arrest and detention, Mr. Osman has been in contact with his family and the U.S. consulate in Dubai. His repeated requests for legal representation have been denied and his attempts to sign a power of attorney to a local lawyer delayed, until 5 December 2022. Therefore, Mr. Osman has no access to information regarding his criminal file, including the charges under which he has been arrested, and has been deprived of his right to contest the legality of his detention.

In view of the nature of the charges against him, and the persistent lack of fair trial guarantees for dissent, the prevailing conditions of detention, the practice of enforced disappearance, and of torture and other cruel, inhuman and degrading treatment against persons suspected of opposing the government in Egypt, Mr. Osman has expressed fear of being arbitrarily arrested and detained by Egyptian authorities subjected to torture or other forms of cruel, inhuman or degrading treatment or punishment, if returned to his country of nationality of Egypt.

While we do not wish to prejudge the accuracy of these allegations, we are particularly concerned about what appears to the arbitrary arrest and detention of Mr. Osman, the absence of notification of the charges against him, and his subsequent enforced disappearance for six hours in which he was placed outside the protection of the law and his fate and whereabouts were unknown.

We would like to stress that the failure to acknowledge deprivation of liberty by State agents and refusal to acknowledge detention constitute an enforced disappearance, regardless of the duration of the said deprivation of liberty or concealment. In this regard, we would like to draw the attention of your Excellency's Government to paragraph 27 of General Assembly Resolution 68/156 (February 2014), which, "[r]eminds all States that prolonged incommunicado detention or detention in secret places can facilitate the perpetration of torture and other cruel, inhuman or degrading treatment or punishment and can in itself constitute a form of such treatment, and urges all States to respect the safeguards concerning the liberty, security and dignity of the person and to ensure that secret places of detention and interrogation are abolished".

We are also alarmed about the risk of torture or ill-treatment, enforced disappearance, arbitrary detention and unfair trial and due process guarantees, to which Mr. Osman could be exposed, if returned to Egypt. In this regard, we wish to draw the attention of your Excellency's Government to article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), which provides that, "[n]o State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture". The same article provides

that "[f]or the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights".

The United Nations Committee against Torture General Comment N. 4 on the implementation of article 3, states in paragraph 13 that "Each case should be examined individually, impartially and independently by the State party through competent administrative and/or judicial authorities, in conformity with essential procedural safeguards, notably the guarantee of a prompt and transparent process, a review of the deportation decision and a suspensive effect of the appeal. In each case, the person concerned should be informed of the intended deportation in a timely manner…". This individual risk should be conducted in due consideration of the situations indicated as representing a risk of torture, in paragraph 29 of the General Comment, including "(d) Whether the person has been judged in the State of origin or would be judged in the State to which the person is being deported in a judicial system that does not guarantee the right to a fair trial".

Articles 8, 9 and 10 of the United Nations Declaration on the Protection of All Persons from Enforced Disappearance, in particular, establishes that no State shall expel, return (refouler) or extradite a person to another State where there are substantial grounds to believe that he would be in danger of enforced disappearance. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights. In article 9 the right to judicial remedy and in article 10 that any person deprived of liberty shall be held in an officially recognised place of detention and, that an official up-to-date register of all persons deprived of their liberty shall be maintained in every place of detention. Furthermore, we would like to recall the absolute nature of the prohibition of enforced disappearance, which has attained the status of *jus cogens*.

We are drawing your Excellency's attention that the last Working Group on the Universal Periodic Review called upon Egypt to immediately end the practice of torture and ill-treatment in all places of detention, investigate any allegation and take the necessary measures to prevent such crimes. **We respectfully request the Emirati authorities to proceed without delay with an independent and thorough individual risk assessment by the competent judicial authorities, or if one has already been carried out, to inform us of the results of that risk assessment, with a view to ascertain that Mr. Osman would not be at risk of serious human rights violations if returned to Egypt, and take the results of such an assessment into account in any decision pertaining to the extradition request by Egypt.**

The legal and procedural safeguards against torture and ill-treatment including the right to legal counsel and to contact one's family from the outset of arrest provided in the UN Body of Principles for the Protection of Persons under Any Form of Detention or Imprisonment (Body of Principles). Furthermore, the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment reiterated, "The risk of torture and ill-treatment is greatest in the first hours of custody

and during incommunicado detention. Therefore, preventive safeguards must be implemented immediately after arrest, including the notification of a third party, access to a lawyer and a physician and the furnishing of the detainee with information on their rights, available remedies and the reasons for arrest." (A/73/207). We further emphasise that among the core elements of a fair trial is the right to legal assistance, which undergirds "the right to a fair and public hearing by a competent, independent and impartial tribunal, as established by law under articles 3 and 9 of the UDHR.

Last but not least, paragraph 16 of the resolution A/RES/65/205 of the UN General Assembly, "…recognizes that diplomatic assurances, where used, do not release States from their obligations under international human rights, humanitarian and refugee law, in particular the principle of non-refoulement."

The full texts of the human rights instruments and standards recalled above are available on www.ohchr.org or can be provided upon request.

**In view of the urgency of the matter, we would appreciate a response on the steps taken by your Excellency's Government to prevent any irreparable damage to the personal integrity of Mr. Osman, to safeguard the rights of Mr. Osman and undertake an immediate risk assessment to ascertain the risk of torture and ill-treatment and of enforced disappearance, if returned to Egypt, in compliance with international *non-refoulement* obligations.**

As it is our responsibility, under the mandates provided to us by the Human Rights Council, to seek to clarify all cases brought to our attention, we would be grateful for your observations on the following matters:

1. Please provide any additional information and any comment you may have on the above-mentioned allegations.

2. Please provide information on the legal and procedural safeguards provided to Mr. Osman from the outset of his arrest and detention, including his right to be informed of the reasons for his arrest and the charges against him, his right to legal representation, and his right to contest the legality of his detention (Habeas Corpus).

3. Please provide detailed information on the legal grounds under which Mr. Osman's extradition was requested, the legal charges referenced in such a request, and the judicial procedure undertaken to establish its legitimacy including the opportunity for Mr. Osman to challenge his extradition before the courts.

4. Please provide detailed information, where available, on any risk assessment carried out by Your Excellency's Government to ascertain the possible risk Mr. Osman may face if he is extradited to Egypt, including being subjected to torture or cruel, inhuman or degrading treatment or punishment, enforced disappearance, arbitrary detention and restriction of fair trial and due process rights, and how this assessment is compatible with international standards, in particular

        article 3 of the UN Convention against Torture and Cruel, Inhuman or Degrading Treatment or Punishment and article 8 of the UN Declaration on the Protection of All Persons from Enforced Disappearance.

5.     Please provide detailed information on the arrest of Mr. Osman and his place of detention during the six hours of his alleged enforced disappearance. Please provide detailed information on any investigations that have been undertaken to identify those responsible, and where applicable, prosecute and sanction them. If no investigation has been undertaken, please illustrate the corresponding reasons.

This communication and any response received from your Excellency's Government will be made public via the communications reporting website within 60 days. They will also subsequently be made available in the usual report to be presented to the Human Rights Council.

Please note that a copy of this letter is being sent to the Government of the United States of America.

Please accept, Excellency, the assurances of our highest consideration.

Alice Jill Edwards
Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment

Aua Baldé
Chair-Rapporteur of the Working Group on Enforced or Involuntary Disappearances

Irene Khan
Special Rapporteur on the promotion and protection of the right to freedom of opinion and expression